UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| VINCENT D. NEWMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-00045-SPM |
| | ) | |
| CLAY STANTON, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

This matter is before the undersigned on the amended petition of Missouri state prisoner Vincent D. Newman ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) and Petitioner's Motion for Evidentiary Hearing (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 9). For the following reasons, both the motion for evidentiary hearing and the amended petition will be denied.

## I. Factual Background

The evidence presented at trial showed the following. At around 9:00 p.m. on the evening of October 16, 2012, Victim was walking down the sidewalk when she heard footsteps, turned, and saw a man run toward her with a gun pointed at her. Resp't Ex. B, at 198, 200, 203-04. As she turned, she fell forward onto the ground. *Id.* at 204-05. The man stood over her for 30 to 40 seconds, with a gun pointed at her face, and told her to hand over her stuff. *Id.* at 205. She handed over her bag, which held a tablet, a pair of shoes, and her cell phone. *Id.* at 205-06. He then looked at her and shot her. *Id.* at 206. She raised her arm to try to shield her face, and the bullet went

through her arm and landed in her face. *Id.* at 206-07. When the shooting occurred, Victim was on the ground, and her assailant was inches away from her. *Id.* at 206. Her assailant took the bag and ran. *Id.* at 208.

Victim described her assailant to police as a black man "with dreads that were spider braids to the back that had a ponytail." *Id.* at 210, 240. Victim testified that he was wearing a khaki or tan jacket, with a gray hoodie under it, and blue jeans. *Id.* at 240-41, 254. On October 24, 2012, Victim worked with a sketch artist to complete a sketch of her assailant. *Id.* at 210-11. She testified that when the sketch was completed, it looked like her assailant. *Id.* at 211. A police detective who was familiar with Petitioner (and with his brother, Joseph Newman), but who did not know Petitioner was involved in the crime, looked at the sketch and immediately identified it as a sketch of Petitioner. *Id.* at 305-07, 309, 311-12. Victim was then shown a sheet with photographs of six people, and she identified Petitioner as her assailant. *Id.* at 216-17; Resp't Ex. M, at 3. Victim was also shown a photograph of Petitioner's brother Joseph, and she said she had never seen him before. Resp't Ex. B, at 224-25, 318-19; 327. In the photograph of Joseph shown to Victim, Joseph had dreadlocks. *Id.* at 328.

Police went to the home where Petitioner and his brother Joseph both frequently stayed. *Id.* at 307, 330, 370. Petitioner answered the door, and Joseph was not present. *Id.* at 299-300, 309, 320, 322. Police arrested Petitioner and found Victim's cell phone in the couch cushions. *Id.* at 307, 320-21, 331; Resp't Ex. M, at 3-4. Police also found Petitioner's I.D. under the couch. Resp't Ex. B, at 349-50. On October 25, 2012, Victim returned to the police station for a physical lineup, where she identified Petitioner as the man who shot her and stated that she was a hundred percent sure he was the guy. *Id.* at 219-23; Resp't Ex. M, at 4. At trial, Victim identified Petitioner as the person who shot her. Resp't Ex. B, at 223.

DNA was recovered from a beige fleece jacket found near the scene of the crime. *Id.* at 262, 272-73; Resp't M, at 4. The jacket contained DNA from two individuals: Petitioner's brother Joseph and a second, unknown individual. Resp't Ex. M, at 4. There was an insufficient amount of DNA to attempt identification of the unknown individual. Resp't Ex. B, at 273, 279-80, Resp't Ex. M, at 4.

Petitioner's trial began on April 28, 2014. Resp't Ex. B, at 2. At trial, Petitioner and his girlfriend, Deborah Williams, testified that Petitioner was with his girlfriend at their house on the night of the crime from 6:00 p.m. until the following morning. Resp't Ex. M, at 4. Petitioner's trial counsel argued that this was a case of mistaken identification. Resp't Ex. B, at 424.

On April 30, 2014, the jury found Petitioner guilty of one count of first-degree robbery, one count of first-degree assault, and two counts of armed criminal action. Resp't Ex. B, at 433-34; Resp't Ex. M, at 4-5. The trial court entered judgment and sentenced Petitioner to twenty years of imprisonment on the robbery count, twenty years of imprisonment on the assault count, and ten years of imprisonment for each of the two counts of armed criminal action, with all sentences to run concurrently. Resp't Ex. M, at 5.

On June 30, 2015, Petitioner filed a motion for new trial with the Missouri Court of Appeals, attaching an affidavit dated May 5, 2015, in which Petitioner's brother, Joseph, confessed that he, not Petitioner, had robbed Victim. Resp't Ex. E. The Missouri Court of Appeals remanded the case to the trial court. Resp't Ex. F. Petitioner filed a supplemental motion for judgment of acquittal or for a new trial with the trial court. Resp't Ex. G. The trial court held hearings at which Petitioner, Joseph, and Petitioner's trial attorney testified. Resp't Ex. I. Joseph testified that he had committed the robbery and assault on October 16, 2012, and he answered several questions about the incident. *Id.* at 22-39. On February 16, 2016, the trial court entered an order denying the

supplemental motion for new trial. Resp't Ex. H. The court found that the evidence was "newly available evidence," which is not a basis for a new trial, rather than "newly discovered evidence," which is. *Id.* at 7. The trial court also found that even if the evidence could be considered "newly discovered evidence," Petitioner would not be entitled to relief because Joseph's testimony was "totally lacking in credibility and, given the variances between his account and the testimony of the victim and the other evidence in the case, it is highly unlikely the outcome of defendant's trial would have been different had Joseph Newman, whose identity was known to the defense, been available to testify." *Id.* at 8.

Petitioner pursued a direct appeal on five claims, and the Missouri Court of Appeals denied all five claims on the merits. Resp't Ex. M. Petitioner later filed an amended motion for post-conviction relief in which he asserted five claims of ineffective assistance of trial counsel. Resp't Ex. P, at 17-48. After an evidentiary hearing, the motion court found Petitioner was not entitled to relief on any of these claims. *Id.* at 57-71. On appeal from the denial of the motion for post-conviction relief, Petitioner re-asserted two of the claims. Resp't Ex. S, at 20-22. The Missouri Court of Appeals denied both claims on the merits. Resp't Ex. U.

On August 4, 2023, Petitioner filed his initial petition in this case. Because he did not use the Court's form, the Court directed him to file an amended petition, and he did so. *See* Am. Pet'n, Doc 4. Giving the Amended Petition a broad construction, it appears that Petitioner asserts the following eight claims: (1) actual innocence based on newly discovered evidence; (2) ineffective assistance of trial counsel—failure to subpoena and call potential alibi witness Jennifer Williams after promising to do so; (3)(a) ineffective assistance of trial counsel—failure to investigate DNA evidence; 3(b) ineffective assistance of trial counsel—conflict of interest involving prosecutor Steven Capizzi; 3(c) ineffective assistance of trial counsel—failure to call other witnesses (Joseph

Newman, Officer Melvin Thomas, Officer David Mendez, and Detective Kevin Griffin);[1] (4)(a) trial court error—issuance of incomplete jury instructions; (4)(b) warrantless arrest; and (4)(c) ineffective assistance of trial counsel—failure to impeach victim.

Respondent filed a response after the amended petition was filed, and Petitioner filed a reply. However, the response and reply were directed to the original petition rather than the amended petition. Upon recognizing this issue, the Court entered an order requiring Respondent to file a supplemental response addressing only the two claims asserted in the amended petition that were not asserted in the original petition: claims (3)(a) and 3(b). The Court also gave Petitioner the opportunity to file a supplemental reply addressing only those two claims. Respondent filed a supplemental response addressing those claims. Petitioner did not file a supplemental reply.

## II. LEGAL STANDARDS

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). Where a claim has been adjudicated on the merits in state court proceedings, a federal court may grant habeas relief only if the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a

[1] Petitioner does not specify the identities of the witnesses other than Joseph Newman in his Amended Petition. However, the Court will assume he is referring to the witnesses he described in his original petition.

State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1).

A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and quotation marks omitted).

"Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006). The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quotation marks omitted); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III. Discussion

The Court will address Petitioner's claims in four groups: (A) the claim that was adjudicated on the merits after Petitioner properly raised it in his state court proceedings (Claim 2); (B) the claim that is not cognizable in a federal habeas proceeding (Claim 4(b)); (C) the claims that have been procedurally defaulted due to Petitioner's failure to properly raise them in state court (Claims 3(a) through (c), 4(a), and 4(c)); and (D) the actual innocence claim (Claim 1), which the Court construes as both a gateway claim intended to overcome the procedural default of his other claims and a freestanding habeas claim.

### A. Claim Adjudicated on the Merits in State Court (Claim 2)

In Claim 2, Petitioner asserts that trial counsel was ineffective for failing to subpoena and call potential alibi witness Jennifer Williams after having told the jury in her opening statement that she would do so. Petitioner presented this claim in his amended motion for post-conviction relief and on appeal from the denial of that motion, and the state courts rejected it on the merits. *See* Resp't Ex. U, at 4-7.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). To show ineffective assistance of counsel, a petitioner must show both that his "counsel's performance was deficient" and that

"the deficient performance prejudiced [his] defense." *Id.* at 687. To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In assessing this claim, the Missouri Court of Appeals properly recognized that *Strickland* provided the applicable standard and found that trial counsel's actions were the result of reasonable trial strategy and that Petitioner had not alleged facts to prove what, if any, prejudicial effect resulted from the unfulfilled evidentiary promise. Resp't Ex. U, at 4. The court stated:

> Here, trial counsel testified that it is a part of her regular trial strategy to inform the jury of testimony she *anticipates* they will hear and at the time she made her announcement she was "very sure" Jennifer Williams would show up to testify. Trial counsel's belief was reasonable in light of the fact that (1) she investigated

> and interviewed Deborah and Jennifer Williams prior to trial, (2) she found them to be cooperative witnesses willing to testify to Newman's whereabouts on the evening of October 16, 2012, and (3) they had a legal obligation to appear at trial because both were under subpoena. Thus, trial counsel's allusion to Jennifer Williams' testimony as part of an alibi defense was a reasonable choice of trial strategy, however ill-fated it may appear in hindsight.
>
> We also point out that trial counsel's failure to call Jennifer Williams was the result of Jennifer Williams failing to appear, apparently because she was unable to take off work. We note that trial counsel is not ineffective where the failure of the witness to testify was caused by the actions of the witness and not the actions or omissions of counsel. *Toland v. State*, 747 S.W.2d 256, 258 (Mo. App. E.D. 1988).
>
> Moreover, when a movant claims counsel erred by failing to call a witness, the movant must show that the witness's testimony would have provided a viable defense. *Covington v. State*, 569 S.W.3d 469, 475 (Mo. App. E.D. 2018); *Johnson v. State*, 406 S.W.3d 892, 908 (Mo. banc 2013) (internal quotation omitted). The testimony of a witness will not be found to provide a viable defense where that testimony "would have been cumulative of other testimony already presented at trial." *Eye v. State*, 551 S.W.3d 671, 675 (Mo. App. E.D. 2018) (citing *Johnson*, 406 S.W.3d 892 at 909)). "Evidence is considered cumulative when it addresses 'a matter fully developed by other testimony.'" *Id.* (quoting *Barnes v. State*, 334 S.W.3d 717, 722 (Mo. App. E.D. 2011)). Thus, "[f]ailing to present cumulative evidence is not ineffective assistance of counsel." *State v. Twenter*, 818 S.W.2d 628, 636 (Mo. banc 1991).
>
> Newman has failed to establish how Jennifer Williams' account of October 16, 2012 would have differed from that of Deborah Williams, who testified at trial. At the evidentiary hearing, Newman conceded that Jennifer Williams' testimony would have been merely corroborative of her daughter's statements. Therefore, Jennifer Williams' testimony was cumulative and would not have provided a viable defense.
>
> Newman's assertion that the trial's outcome would have been different absent trial counsel's unfulfilled promise is unsupported by the record. In order to prevail on his postconviction claims, Newman must allege facts, not conclusions. As he has not done so, and as trial counsel's actions were based in reasonable trial strategy, we find that the motion court did not clearly err in denying Newman's claim.

*Id.* at 5-7.

The state court's rejection of this claim was not contrary to, or an unreasonable application of, *Strickland,* nor was it based on an unreasonable determination of the facts. The state court's findings were supported by trial counsel's testimony at the evidentiary hearing that she had been in contact with Jennifer and Deborah, that they were cooperative, that she was very sure Jennifer

would show up and testify at trial because she thought Jennifer had told her (or her investigator) that Jennifer would, that Deborah and Jennifer lived together, and that trial counsel's investigator served Deborah subpoenas for both Deborah and Jennifer. Resp't Ex. Q at 17-20. Petitioner points to no evidence contrary to this evidence aside from his own testimony that trial counsel told him she thought they only needed one alibi witness and she had not subpoenaed Jennifer Williams. *Id.* at 8-10. The state court implicitly found this testimony less credible than counsel's testimony, and it does not constitute "clear and convincing evidence" that would be necessary to rebut the presumption of the correctness of the state court's factual findings. *See* 28 U.S.C. § 2254(e)(1). Based on these factual findings, it was not objectively unreasonable for the state court to determine that trial counsel was not deficient when she told the jury Jennifer would testify even though she ultimately did not. The state court's determination that the failure to call Jennifer Williams did not prejudice Petitioner because her testimony would have been cumulative is also supported by the trial transcript, which shows Deborah testified to the same facts Petitioner alleges Jennifer would have testified to. Resp't Ex. B, at 351-58.

For the above reasons, Claim 2 will be denied.

### B. Non-cognizable Claim (Claim 4(b))

In Claim 4(b), Petitioner appears to assert that he was arrested without a warrant. The Court construes this as a claim that his Fourth Amendment rights were violated. In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). "To show that he was not afforded an opportunity for full and fair litigation of his claim, [Petitioner] would have to show that the State 'provided no corrective

procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but [Petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Willett v. Lockhart*, 37 F.3d 1265, 1271-72 (8th Cir. 1994) (en banc)). "The federal courts on habeas review of [Fourth Amendment claims made by state prisoners] are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Willettt*, 37 F.3d at 1273.

Petitioner does not argue that Missouri did not provide any corrective procedures to address the alleged Fourth Amendment violation. The Court notes that Missouri does provide a procedure for raising Fourth Amendment claims. *See* Mo. Sup. Ct. R. 24.05; Mo. Rev. Stat § 542.296.5(5); *State v. Galazin*, 58 S.W.3d 500, 504-05 (Mo. 2001). Petitioner also does not argue that Petitioner was precluded from using Missouri's procedures because of an unconscionable breakdown in the underlying process, and the Court finds nothing in the record to suggest that any such breakdown occurred.

For the above reasons, Claim 4(b) is not cognizable in this proceeding and will be denied.

### C. Procedurally Defaulted Claims (Claims 3(a)–(c) , 4(a), & 4(c))

Respondent argues that Claims 3(a) through (c), Claim 4(a), and Claim 4(c) have been procedurally defaulted due to Petitioner's failure to properly raise them in state court. For the reasons stated below, the Court agrees. Thus, the Court can only review these claims on their merits if Petitioner can either show cause for the default and actual prejudice or show that the default will result in a fundamental miscarriage of justice. Petitioner does not attempt to show cause and prejudice to excuse the default, but he does argue that the fundamental miscarriage of

justice exception applies because he is actually innocent. The Court will address the actual innocence argument in part (D), below.

*1. Claim 3(a) – failure to investigate DNA evidence*

In Claim 3(a), Petitioner alleges that his trial counsel was ineffective because she failed to investigate DNA evidence. This claim has been procedurally defaulted because Petitioner did not raise it in his amended motion for post-conviction relief or in the appeal from the denial of that motion. Resp't Ex. P, at 16-54; Resp't. Ex. S, at 20-22. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("In Missouri, 'a claim must be presented at each step of the judicial process in order to avoid default.'") (quoting *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994)); *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (claims of ineffective assistance of counsel not presented in motion for post-conviction relief or appeal to the Missouri Court of Appeals are procedurally defaulted).

In the alternative, assuming the default could be excused, the Court finds that claim 3(a) is without merit because Petitioner cannot establish either deficient performance or prejudice under *Strickland*. At trial, evidence was presented that the DNA found on the jacket matched Joseph, not Petitioner, and trial counsel emphasized that point. Although there was a second, unknown person's DNA also present, the only evidence in the record indicates that there was too little DNA present to determine the identity of that individual or even whether the individual was male or female. It is unclear what more trial counsel could or should have done to investigate the DNA evidence or how such investigation could possibly have helped Petitioner or changed the outcome of his case.

*2. Claim 3(b) – conflict of interest involving prosecutor*

In Claim 3(b), Petitioner alleges that his trial counsel was ineffective due to a conflict of interest involving prosecutor Steven Caprizzi. Specifically, Petitioner alleges that his trial counsel was "friends with the prosecutor," that his trial counsel asked the prosecutor about his wife's pregnancy, and that the prosecutor asked his counsel not to bring up any other cases during trial. This claim has been procedurally defaulted because Petitioner did not raise it in his amended motion for post-conviction relief or in the appeal from the denial of that motion. Resp't Ex. P, at 16-54; Resp't. Ex. S, at 20-22. *See Interiano*, 471 F.3d at 856.

In the alternative, assuming the default could be excused, the Court finds this claim without merit. Allegations of friendship between defense counsel and a prosecutor, without more, do not establish a conflict of interest. *See Khan v. Montgomery*, No. 2:21-04050 WLH (ADS), 2023 WL 8457248, at *11 (C.D. Cal. Oct. 11, 2023) ("Petitioner's bare allegation that his trial counsel was good friends with the district attorney is insufficient to state an actual conflict. Friendships or personal relationships, without more, do not raise actual conflicts."), *report and recommendation adopted*, No. 2:21-04050 WLH (ADS), 2023 WL 8455022 (C.D. Cal. Dec. 5, 2023); *Washington v. May*, No. CV 17-601-CFC, 2022 WL 4598510, at *18 (D. Del. Sept. 30, 2022) ("[C]onclusory allegations of a 'conflict of interest' based upon defense counsel's friendship with the prosecutor do not support a claim for ineffective assistance of counsel."). Moreover, the record shows that Petitioner's counsel did not comply with any request by the prosecutor that she not bring up any other cases during trial; Petitioner's counsel bring up Joseph's other robbery charges but was not permitted to do so. Resp't Ex. B, at 324-26.

3. *Claim 3(c) – failure to call other witnesses (Joseph Newman, Officer Melvin Thomas, David Mendez, and Detective Kevin Griffin)*

In Claim 3(c), Petitioner asserts that trial counsel was ineffective because she "failed to call witnesses." Am. Pet'n, Doc. 4, at 6. The Court will assume he is referring to the witnesses he describes in his original petition: Joseph Newman, Officer Melvin Thomas, David Mendez, and Detective Kevin Griffin.

As to the failure to call Joseph Newman, this claim has been procedurally defaulted because although Petitioner raised this claim in his amended Rule 29.15 motion, he did not raise it again on appeal from the denial of that motion. Resp. Ex. P, at 17; Resp. Ex. S, at 20-22. *See Arnold*, 675 F.3d at 1086-87 (finding a claim of ineffective assistance of counsel that was presented in motion for post-conviction relief but not on appeal from the denial of that motion was procedurally defaulted); *Osborne v. Puckett*, 411 F.3d 911, 919 (8th Cir. 2005) ("Although Osborne raised this failure-to-investigate claim in his Rule 29.15 motion to the state trial court, he did not include this specific ineffectiveness claim in his appeal to the Missouri Court of Appeals. This claim is now procedurally barred.") (footnote omitted).

In the alternative, assuming the default could be excused as to the failure to call Joseph Newman, the Court finds this claim without merit. Addressing the failure to call Joseph Newman, the motion court identified the appropriate two-prong test for ineffective assistance of counsel claims. Resp't Ex. P, at 64. After holding an evidentiary hearing at which Joseph and Petitioner's trial counsel testified, the motion court found that the first time Petitioner's counsel was aware that Joseph had confessed to the crime was *after* Petitioner had been sentenced. *Id.* at 67-68. It found that Petitioner thus had not shown that Joseph would have testified if called or that his testimony would have provided a viable defense, and it denied the claim. *Id.* at 68. The state court's rejection of this claim was not contrary to, or an unreasonable application of, *Strickland,* nor was it based

on an unreasonable determination of the facts. It was reasonable for the state court to determine that it was not deficient performance not to call a witness when Plaintiff's counsel did not know whether that witness would testify in Petitioner's favor.

As to the other three witnesses, this claim has been procedurally defaulted because Petitioner did not raise ineffective assistance claims related to these three witnesses either in his amended motion for post-conviction relief or in the appeal from the denial of that motion. Resp't Ex. P, at 16-54; Resp't. Ex. S, at 20-22. *See Interiano*, 471 F.3d at 856; *Arnold*, 675 F.3d at 1086-87.

In the alternative, assuming the default could be excused as to the failure to call these three witnesses, the Court finds this claim without merit. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires a petitioner to, among other things, "state the facts supporting each ground." The Eighth Circuit has held that to comply with Rule 2(c), a petitioner "must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990); *accord, e.g., Moore v. Stange*, No. 1:21-CV-114 JSD, 2024 WL 4664256, at *5 (E.D. Mo. Nov. 4, 2024). Petitioner states no facts in support of these claims. He does not allege what testimony these individuals would have offered if called at trial, nor does he allege any other facts that would give the Court a reason to believe that there is any reasonable probability that, but for counsel's failure to call these witnesses, the outcome of the proceeding would have been different.

*4. Claim 4(a) – issuance of incomplete jury instructions*

In Claim 4(a), Petitioner asserts that the trial court erred by issuing incomplete jury instructions. Under Missouri law, claims of trial court error must be raised on direct appeal. *See Zink v. State*, 278 S.W.3d 170, 191 (Mo. 2009); *Jones v. State*, 172 S.W.3d 876, 879 (Mo. Ct. App. 2005). This claim has been procedurally defaulted because Petitioner did not raise any claim of instructional error in his direct appeal. *See* Resp't Ex. D; Resp't Ex. J.

In the alternative, assuming the default could be excused, the Court finds Claim 4(a) without merit. As with Claim (3)(c), Petitioner alleges no facts from which the Court could determine that Petitioner might be entitled to relief on this claim. "Habeas corpus relief may be granted only when an erroneous jury instruction constituted 'a fundamental defect' that resulted 'in a complete miscarriage of justice, [or] an omission inconsistent with rudimentary demands of a fair trial.'" *Louisell v. Dir. of Iowa Dep't of Corr.*, 178 F.3d 1019, 1022 (8th Cir. 1999). Here, Petitioner does not allege what jury instruction(s) he believes were incomplete, nor does he allege any facts to suggest that any instructional error resulted in a miscarriage of justice or an omission inconsistent with the rudimentary demands of a fair trial.

*5. Claim 4(c) – failure to impeach Victim*

In Claim 4(c), Petitioner asserts that his trial counsel did not impeach Victim for perjury or misidentification. This claim has been procedurally defaulted because although Petitioner raised this claim in his amended Rule 29.15 motion, he did not raise it again on appeal from the denial of that motion. Resp. Ex. P at 39; Resp. Ex. S at 20-22. *See Arnold*, 675 F.3d at 1086-87; *Osborne,* 411 F.3d at 919.

In the alternative, assuming the default could be excused, the Court finds this claim is without merit. Addressing this claim, the motion court found it to be without merit because trial

counsel did try to impeach the Victim with evidence of Victim's prior inconsistent statement to Officer Melvin Thomas. Resp't Ex. P, at 69. This finding was supported by the trial transcript, which showed that trial counsel questioned the Victim about her prior statements to officers that the man that shot her had a dark complexion and thin lips and about her prior statements in a deposition about when she first noticed the gun. Resp't Ex. B, at 241-58. Because the state court's finding that Claim 4(c) without merit is supported by the record and Petitioner offers no clear and convincing evidence of error, the Court finds this claim without merit.

**D. Actual Innocence**

In Claim 1, Petitioner argues that he is innocent of the crime of which he was convicted. He bases this claim on (1) the affidavit of Joseph Newman, signed after Petitioner's trial, in which Joseph states that he actually committed the crime of which Petitioner was convicted, (2) the DNA evidence found on the jacket at the crime scene, which matched Joseph's DNA, and (3) his assertion that Joseph pleaded guilty to another crime that was similar in characteristics. He characterizes this as newly discovered evidence. The Court construes this both as (1) a gateway claim that could permit the Court to consider his procedurally defaulted claims, and (2) a freestanding habeas claim.

*1. Gateway claim*

The Court cannot consider Petitioner's defaulted claims unless Petitioner can show "either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896. Petitioner does not attempt to show cause and prejudice to excuse the procedural default. However, he does attempt to show that the default will result in a fundamental miscarriage of justice by asserting that newly discovered evidence establishes his actual innocence.

A "gateway" claim of actual innocence, which has long been recognized by the Supreme Court, permits a federal habeas court to address the merits of procedurally defaulted claims under the "fundamental miscarriage of justice" exception where a petitioner has proven that he is actually innocent of the crime of which he was convicted. *See Schlup v. Delo*, 513 U.S. 298, 324-28 (1995); *Nash v. Russell*, 807 F.3d 892, 898-99 (8th Cir. 2015). To establish a gateway claim of actual innocence, "a petitioner must satisfy a two-part test." *Nash*, 807 F.3d at 899 (citing *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001)). First, "the 'allegations of constitutional error must be supported with new reliable evidence not available at trial.'" *Id.* (quoting *Amrine*, 238 F.3d at 1029). *See also Schlup*, 513 U.S. at 324 ("To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. "). Evidence is only "new" in this context if it was "not available at the time of trial through the exercise of due diligence." *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011). Second, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Nash*, 807 F.3d at 899. *See also Schlup*, 513 U.S. at 329 ("A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). In determining whether these standards are satisfied, the habeas court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). "Based on this total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (internal quotation

marks omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* Examples of evidence that may establish factual innocence include exculpatory scientific evidence, trustworthy eyewitness accounts, critical physical evidence, or a credible confession by another person. *See Schlup*, 513 U.S. at 324; *Sawyer v. Whitley*, 505 U.S. 333, 340-41 (1992).

Some of the evidence Petitioner relies in in Claim 1 is not "new" because it was available at trial. The evidence that Joseph's DNA was present on the jacket found at the crime was available and was presented at trial. Resp't Ex. B, at 284-87. The evidence that Joseph had been charged with another robbery and assault arising out of an October 24, 2012, incident with characteristics similar to the crime here was also available at trial. Although Joseph was not convicted until after Petitioner's trial had ended, Joseph was charged with this crime before Petitioner's trial began, and both the trial transcript and trial counsel's testimony during post-conviction proceedings show that trial counsel was aware that Joseph had pending charges for another robbery and attempted to ask questions about that robbery at trial. *Id.* at 324-26; Resp't Ex. I, at 5-6.[2] This evidence is thus not "new" for purposes of establishing an actual innocence claim. In the alternative, as discussed below, even assuming that some of the evidence related to this robbery could be considered "new," the Court is not persuaded that had evidence of this robbery been introduced along with the other new and old evidence, "no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. 329.

---

[2] The state court post-trial record indicates that in *State of Missouri v. Joseph Newman*, 1422-CR00599, Joseph pleaded guilty to robbery, assault, and armed criminal action arising out of an October 24, 2012, incident in which he pointed a handgun at the victim, took her bag and iPhone, and then shot her. Resp't Ex. G, at 3. A review of the docket in that case indicates that Joseph was arraigned for these crimes on March 28, 2014 (prior to Petitioner's trial) and pleaded guilty on August 11, 2014 (after Petitioner's trial had concluded).

Joseph's affidavit confessing to the crime does appear to be new evidence that was not available at trial. The Court must therefore assess whether it is "reliable" and, if so, whether it is more likely than not that had it been introduced, no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt.

Joseph's affidavit was presented to the state court in Plaintiff's post-trial briefing and appeal, and the state trial court held an evidentiary hearing to evaluate this new evidence and determine whether it warranted a new trial. At that hearing, Joseph testified as follows. Joseph's memory of the robbery was kind of foggy because he was under the influence when it occurred. Resp't Ex. I, at 25-26. The robbery occurred at around 10:00 or 11:00 p.m. *Id.* at 26. Joseph got within three to five feet of the victim. *Id.* at 27. The victim was shorter than he was, but he had no idea how old she was. *Id.* He weighed about 280 pounds at the time, and he could not say whether she weighed more or less than he did, but he said she was average. *Id.* at 27-28. She was holding a book bag or shopping bag that he took from her. *Id.* at 28-29. There was nothing inside the bag. *Id.* at 29. He also took a phone from her. *Id.* He shot her in the arm while she was facing him, running backward. *Id.* at 30. He was wearing a sky-blue hoodie jacket and sky-blue pants. *Id.* at 30-31. He identified the beige jacket found at the crime scene as his, but he testified that he was wearing a blue jacket that night and the last time he saw the beige jacket was at the house. *Id.* at 31, 39. He left the cell phone by the couch where his brother slept. *Id.* at 38.

The trial court found that Joseph's testimony was "totally lacking in credibility." Resp't Ex. H at 8. The trial court noted that "[h]is testimony differed from the testimony of the victim, who was a credible witness, in several respects." *Id.* at 6. Specifically, it found that Joseph "had the time and place of the robbery wrong, the distance from the victim at the time of the shooting wrong, [and] what was in the tote bag wrong," and it found that "his description of the jacket was

not consistent with other evidence in the case." *Id.* at 6. It concluded that "given the variances between [Joseph's] account and the testimony of the victim and the other evidence in the case, it is highly unlikely the outcome of defendant's trial would have been different had Joseph Newman . . . been available to testify." *Id.* at 8. On appeal, the Missouri Court of Appeals affirmed the trial court's denial of Petitioner's motion for new trial based on Joseph's testimony, stating that it would "defer to the trial court's superior position to determine credibility." Resp't Ex. M, at 18.

The state court's findings that Joseph's testimony lacked credibility and conflicted with other evidence presented are factual findings that this Court must presume are correct absent a showing of clear and convincing evidence of error. *See Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010) (considering a gateway claim of actual innocence based on newly discovered evidence and finding that "[t]he state post-conviction court's finding that the evidence lacked credibility and conflicted with [the petitioner's] testimony is a factual finding which we presume to be correct" under 28 U.S.C. § 2254(e)); *Cosey v. Lilley,* 62 F.4th 74, 82-83 (2d Cir. 2023) (collecting cases and stating, "We now join our sister circuits in holding that, in the context of a gateway claim of actual innocence under *Schlup*, a federal habeas court must presume that a state court's factual findings are correct, rebuttable only upon a showing of clear and convincing evidence of error."); 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Although "AEDPA does not make deference to state court fact-finding dependent on the adequacy of the procedures followed by the state court," the "character of the process upon which the state court based its conclusion may have some bearing on whether a petitioner's showing

amounts to 'clear and convincing' evidence" that the state court erred." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) (addressing deference to state court findings in the context of an actual innocence claim). "[W]here . . . the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part. This is especially so when the court resolved issues like witness credibility, which are factual determinations for purposes of Section 2254(e)(1)." *Cosey*, 62 F.4th at 83 (internal quotation marks omitted). *See also Sharpe*, 593 F.3d at 379 (holding the district court erred by ruling in favor of a petitioner on a *Schlup* claim without applying deference to the state court's finding, made after an evidentiary hearing, that the new evidence the petitioner presented was not credible).

Petitioner offers no clear and convincing evidence of error in the trial court's finding regarding Joseph's credibility, nor does the Court find any such evidence in the record. The trial court evaluated the credibility of Joseph's testimony after considering both Joseph's live testimony in post-trial proceedings and all of the other evidence presented at trial. The trial court also provided reasons for its credibility finding, and a review of the state court record reveals no clear error in that reasoning. Victim testified the tote bag Petitioner took from her contained a pair of shoes, a tablet, and her cell phone, whereas Joseph testified that there was nothing in Victim's bag. Victim testified that the attack took place around 9:00 p.m., whereas Joseph testified it took place at 10:00 or 11:00 p.m. Victim testified that her attacker was wearing a gray hoodie and a khaki or tan jacket, with blue jeans, whereas Joseph testified that he was wearing a sky-blue hoodie jacket and sky-blue pants. Victim testified that Petitioner was "inches away" from her, whereas Joseph testified that he was three to five feet away from her. Victim testified that she was on the ground when she was shot, whereas Joseph testified that she was running backward. Other facts also

reduce the credibility of Joseph's testimony, including that he was not able to estimate the Victim's age or to say whether she weighed more or less than he did.

Because the Court must presume the correctness of the state court's finding that Joseph's testimony lacked credibility, and because Plaintiff has not rebutted that presumption, the Court finds Petitioner has not supported his claim with "new *reliable* evidence," as required by *Schlup. See United States v. Loudner*, 203 F. Supp. 2d 1083, 1100 (D.S.D. 2002) (holding that the testimony of "a witness with no credibility whose testimony was unreliable and anything but trustworthy . . . does not satisfy the reliability component of the *Schlup* 'actual innocence' test" and finding there was no need to address the second prong of the *Schlup* test).

Moreover, even if Petitioner could satisfy the "new reliable evidence" prong of the actual innocence test, the Court is not persuaded that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. There was a great deal of evidence presented at trial that Petitioner, not Joseph, committed the crime. After Victim described her assailant to a sketch artist, a detective who knew both Petitioner and Joseph and who was not aware Petitioner was involved in the crime testified that he "immediately" recognized the sketch as Petitioner and that there was "nobody else [he] know[s] that looks like that." Resp't Ex. B, at 294-95, 305-07, 309, 311-12. Victim also identified Petitioner from a photo lineup and indicated, at the time, that she was certain she had made a correct identification. *Id.* at 216-19. In contrast, when Victim was shown a photograph of Joseph (in which Joseph had not yet cut his hair and still had dreadlocks, like Petitioner), Victim said she had not seen him before. *Id.* at 327-28. Victim also identified Petitioner in a physical lineup as the person who shot her and wrote that she was a hundred percent sure he was the guy. *Id.* at 220-23. Victim again identified Petitioner in the courtroom as the person who shot her. *Id.* at 223. Finally,

photographs of both Petitioner and Joseph were admitted into evidence at trial, *id.* at 299-300, and the trial court found in post-trial proceedings that "[t]heir apparent dissimilarities make it extremely unlikely one could be confused for the other." Resp't Ex. H, at 3 n.1.[3]

A *credible* confession to the crime by Joseph would certainly provide strong evidence in support of an actual innocence claim, and likely would be sufficient to satisfy the *Schlup* standard—especially when considered in combination with the evidence that Joseph's DNA was found on the jacket that was at the scene of the crime and the evidence that Joseph pleaded guilty to a different crime with similar characteristics. However, given that the Court must presume the confession was "totally lacking in credibility," the confession has little probative value. In light of all of the other evidence discussed above—in particular, Victim's assistance in the creation of a sketch that was immediately identifiable as Petitioner to someone who knew both Petitioner and Joseph, Victim's lack of recognition of a photograph of Joseph, the state trial court's finding based on photographs that Petitioner and Joseph are unlikely to be mistaken for one another, and Victim's repeated and certain identifications of Petitioner—the Court cannot say that *no* juror confronted with all of the evidence, including Joseph's testimony, could have found Petitioner guilty beyond a reasonable doubt.

For all of the above reasons, Petitioner has not made a showing of a gateway claim of actual innocence, and he cannot rely on the fundamental miscarriage of justice exception to permit the Court to review his procedurally defaulted claims.

---

[3] The copies of these photographs in the record before this Court are not of a quality that would permit the Court to evaluate how similar they are. *See* Resp't Ex. H, at 9-10. However, this Court must presume the correctness of the trial court's factual findings regarding these photographs, and Petitioner has not provided any clear and convincing evidence to rebut that presumption.

*2. Freestanding claim*

Finally, the Court considers whether Petitioner has established a freestanding claim of actual innocence. Although a gateway claim of actual innocence has long been recognized, the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggins v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 389, 404-05 (1993)). *See also Feather v. United States*, 18 F.4th 982, 986 (8th Cir. 2021) (recognizing that the Supreme Court has not decided whether a petitioner may be entitled to habeas relief based on a freestanding claim of actual innocence and finding it unnecessary to decide the question on the facts before the court). The Eighth Circuit has recognized that "if the Supreme Court were to grant relief on this type of claim, 'the threshold . . . would be extraordinarily high [and] would require more convincing proof than the gateway standard.'" *Nash*, 807 F.3d at 899 (quoting *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014)). "[O]n a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Dansby*, 766 F.3d at 816 (quoting *Schlup*, 513 U.S. at 327). "The 'extraordinarily high' threshold, if recognized, would be even higher." *Id.* (quoting *House*, 547 U.S. at 555 (2006)). Because Petitioner cannot establish a gateway claim, he also cannot satisfy the more demanding standard that would apply to a freestanding claim if such a claim were recognized.

## IV. MOTION FOR EVIDENTIARY HEARING

On April 20, 2026, Petitioner filed a Motion for Evidentiary Hearing. In the motion, he provides what appears to be a summary or transcription of a CODIS hit notification finding that DNA found at the crime scene matched Joseph's DNA and indicating that a buccal swab of Joseph

would be needed for an in-house confirmation before a lab report could be produced reflecting the hit. Petitioner asserts that an in-house confirmation was never completed, that his trial attorney failed to investigate the DNA on the jacket, and that Joseph completed an affidavit admitting to the crime of which Petitioner was convicted. Petitioner states that this is enough cause for an evidentiary hearing.

Although it is somewhat unclear, it appears that Petitioner's argument is that the Court should hold an evidentiary hearing to permit additional testing of the DNA that was found on the jacket at the scene. This would appear to be relevant to Claim 3(a)—that his trial counsel was ineffective for failing to investigate DNA evidence.

28 U.S.C. § 2254(e)(2) provides as follows:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Here, Petitioner does not assert either that his claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered by the exercise of due diligence, so the Court is barred from holding an evidentiary hearing. Moreover, even if Petitioner could satisfy the requirements of § 2254(e)(2) or could show that it does not apply here, the Court would deny the request for a hearing because it does not appear to the Court that an evidentiary hearing on the DNA evidence would assist in resolving Claim 3(a) or any other claim. The

undisputed evidence already available shows that the jacket contained Joseph's DNA and trace amounts of DNA from a second individual, with the trace amounts being too small to analyze. Petitioner does not explain how additional DNA investigation could assist in resolving Claim 3(a) or any other claims. Thus, even if an evidentiary hearing were permitted under § 2254(e)(2), the Court would deny Petitioner's request. *See Newton v. Kemna,* 354 F.3d 776, 785 (8th Cir.2004) ("[T]he court may deny an evidentiary hearing if such a hearing would not assist in resolving the petitioner's claim.").

Although Petitioner's motion appears to be primarily directed toward DNA evidence, the Court has considered the possibility that Petitioner is also seeking an evidentiary hearing to develop additional evidence related to Joseph's confession and Petitioner's claim of actual innocence. To obtain an evidentiary hearing based on a claim of actual innocence, Petitioner "must make a threshold showing of actual innocence." *Rankin v. Payne*, 141 F.4th 913, 925, 927 (8th Cir. 2025) (analyzing a gateway claim of innocence under *Schlup* and finding that "[b]ecause [the petitioner] has not made a threshold showing of actual innocence, he is not entitled to an evidentiary hearing"). In determining whether to hold an evidentiary hearing on an actual innocence claim, the district court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 331-32. In making this assessment, "the court may consider how . . . the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.*

Here, as discussed at length above, Petitioner has not made a threshold showing of actual innocence. Presuming the correctness of the state court's factual finding that Joseph was not credible, the probability that the evidence is reliable is very low. Moreover, Petitioner does not explain how this Court's holding of a second evidentiary hearing could reveal clear and convincing

evidence that the state trial court's finding was incorrect, nor is it apparent to the Court. Thus, Petitioner is not entitled to an evidentiary hearing on his actual innocence claim.

## V. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. The Court next considers whether to issue a certificate of appealability. To grant such a certificate, the Court must find that Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To warrant a certificate of appealability as to claims rejected on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has not satisfied that standard as to the claim that was reviewed on the merits in state court or the claim the Court found not cognizable.

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* The Eighth Circuit has "distilled the following three rules from *Slack*":

> 1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted.

*Langley v. Norris*, 465 F.3d 861, 862-63 (8th Cir. 2006) (quoting *Khaimov v. Crist,* 297 F.3d 783, 786 (8th Cir. 2002)). Here the Court finds that its rulings regarding procedural default and

Petitioner's failure to overcome that default through a showing of actual innocence are clear, so no certificate should be issued. In the alternative, the Court finds that even if reasonable jurists would find it the Court's rulings on the procedural default issues debatable, Petitioner has not shown that the merits of the substantive underlying constitutional claims are debatable, so no certificate should be issued.

For all of the above reasons,

**IT IS HEREBY ORDERED** that Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 4] is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing [Doc. 20] is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2026.